IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

BARBARA KOCUREK, Individually, §
and as Assignee of the ESTATE OF §
LOUIS J. KOCUREK, and §
on Behalf of All Others Similarly Situated §
§
VS. § CASE NO. SA-08-CA-0581-FB
§
CUNA MUTUAL INSURANCE SOCIETY § JURY DEMANDED

**PLAINTIFF'S, INDIVIDUALLY AND ON BEHALF OF ALL OTHERS SIMILARLY SITUATED, SUR-REPLY IN SUPPORT OF RESPONSE TO CUNA MUTUAL INSURANCE SOCIETY'S MOTION TO DISMISS**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Now comes Plaintiff, BARBARA KOCUREK, Individually and as Assignee of the claims against Cuna Mutual Insurance Society by the ESTATE OF LOUIS J. KOCUREK, Deceased, and on behalf of all others similarly situated, and files this Sur-Reply in Support of Response to Cuna Mutual Insurance Society's Motion to Dismiss, and respectfully shows the Court as follows:

## I.    INTRODUCTION

Obviously realizing that its Motion is deficient and lacks merit, Defendant filed a 17-page reply, which is almost as long as its actual Motion, in an attempt to circumvent the meritorious arguments raised in Plaintiffs' Response. Plaintiff believes that her Response adequately addresses the many holes in Defendant's Motion; however, Plaintiff files this sur-reply in order to address the many legal fallacies and factual inconsistencies raised in Defendant's Reply.

First, the Court should note that Defendant has not responded to Plaintiffs' motion for leave to amend the Complaint, which is pled in the alternative to the Court's denial of Defendant's Motion. As the Court will notice upon review of Defendant's Motion and Response,

the majority of its arguments relate to the pleading requirements under Rule 8 and Rule 9 of the Federal Rules of Civil Procedure. Plaintiff is confident that the Complaint, as written, is adequate to meet the minimal pleading requirements of Rule 8(a) and Rule 9(b). *See* Complaint. However, should the Court adopt any of Defendant's arguments, Plaintiff only asks for an opportunity to amend its Complaint before being dismissed, which is consistent with the case law addressing motions for leave to amend pleadings prior to dismissal. *See* Plaintiff's Response, pp. 3-4.

The crux of Defendant's entire Reply is that the T-24 Policy and the T-05 Policy are completely independent from one another. First, the Court should note that Defendant, to the extent it has even raised this argument in its Motion, briefly mentions this argument in a footnote. *See* Defendant's Memo, p.8, Fn. 5. However, the majority of Defendant's arguments in its Reply are based on this unsubstantiated assertion. Furthermore, this is obvious misstatement of the facts. What Defendant fails to bring the Court's attention is that the *only* reason Ms. Kocurek has been denied her rightful benefits under the T-24 Policy is because Defendant alleges that its AD&D policies prohibit Mr. Kocurek from being named an insured under the two policies pursuant to the one policy only provision. *See* Complaint, Ex. A. The Complaint thoroughly describes the relationship between the T-24 Policy and T-05 Policy and Defendant simply ignores those facts and alleges that the two policies are mutually exclusive, therefore Plaintiff could not have been harmed by the solicitation and sale of the second policy. In raising this argument, Defendant asks the Court to ignore the obvious: that Ms. Kocurek has not received her rightful benefits under the T-24 Policy because of Defendant's solicitation and sale of the T-05 Policy and Defendant's interpretation of the one policy only provision.

Contrary to Defendant's Reply, Plaintiff has not conceded *any* points outside of the Complaint. Although it is true that Plaintiff was a beneficiary under the T-24 Policy, it has never been Plaintiffs' position that the one policy only provision is unambiguous. To the contrary, Plaintiff has clearly asserted in the Complaint and in her Response that this provision is ambiguous and unconscionable. Furthermore, Plaintiff has not conceded that she lacks any interest in the T-05 Policy since it is unclear whether the beneficiaries named in the T-05 Policy were properly designated by Mr. Kocurek, and whether such designations would be valid, in which case Ms. Kocurek would be the default beneficiary. *See* Complaint, Ex. A. Finally, with respect to Plaintiff's negligence claim, Defendant completely mischaracterizes the arguments raised in Plaintiff's Response. Specifically, Plaintiff's Response only responds to Defendant's argument that Defendant's liability "if any, simply does not arise independent of the insurance policy, and thus, absent some legal, not contractual, duty owed by [Defendant], Plaintiff's negligence claims are subject to dismissal as a matter of law." *See* Defendant's Motion to Dismiss, p. 18. In response to this incorrect assertion, Plaintiff's Response provides that a legal duty does exist beyond the insurance contract and describes that facts outside of the policy which give rise to Defendant's liability for negligence. In its Reply, Defendant reshapes its argument in an attempt to pigeon-hole Plaintiff's negligence claims by now arguing the legal duties arise *solely* out of Defendant's conduct "outside of its performance of the T-24 Policy." *See* Defendant's Reply, p.2. Defendant cannot have it both ways and Plaintiff is confident that the Court will not buy into Defendant's catch-22 arguments.

Plaintiff's Response thoroughly responds to Defendant's arguments regarding her claims under the DTPA, Insurance Code, and for fraud claims. Defendant's arguments relating to Plaintiff's fraud claims clearly evidence Defendant's attempt at turning this motion to dismiss

into a summary judgment on the merits. Moreover, contrary to Defendant's arguments, it has always been Plaintiff's position that the one policy only provision and the entire policy are ambiguous and unconscionable. Moreover, Plaintiff has never alleged unconscionability as an element of fraud, but in responding to Defendant's assertion that an insured has a duty to read a policy. Plaintiff invites the Court to examine the Complaint and Exhibits attached thereto which demonstrate that Plaintiff has properly pleaded her claims such that this case should not be dismissed.

## II. REPLY TO ARGUMENTS

### A. Standard for Review

A review of Plaintiff's Complaint and Defendant's Motion and Reply clearly show that Defendant seeks to have the Court determine the merits of the case at this early stage in litigation prior to any discovery having been completed. Defendants' Response completely ignores the well-settled principle that a "Complaint need not set down in detail all the particularities of a plaintiff's complaint against a defendant . . . all a complaint need do is afford the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Carrasco v. NOAMTC Inc.*, 124 Fed. Appx. 297, 301 (6th Cir. 2004) (citations omitted). Moreover, the United States Supreme Court has interpreted Rule 8(a) to allow for simplified notice pleading, noting that "the Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." *Id.* (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002) (quoting *Conley v. Gibson*, 355 U.S. 41, 47, 2 L. Ed. 2d 80, 78 S. Ct. 99 (1957)). Under the above standard, Defendants certainly cannot allege that they have not been put on notice of Plaintiff's claims since Defendant itself

attempts to summarize such facts for the Court, albeit incorrectly, in their Motion and Response. Certainly, taking Defendant's own rundown of Plaintiff's claims as true would render dismissal inappropriate in this case. Plaintiff is confident that the Complaint, as written, is adequate to meet the minimal pleading requirements of Rule 8(a) and Rule 9.

## B. Plaintiff's Standing

### 1. Plaintiff has Article III Standing

Once again, Defendant attempts to downplay and even dismiss Plaintiff's injuries in this case. According to Defendant's own case law, the minimal requirement for Article III standing is that Plaintiff show she has suffered an injury and that there must be a causal connection between the injury and conduct complained of. *See* Defendant's Motion to Dismiss, p. 7, ¶1. In most cases, the Article III standing argument is raised where the court's decision will be advisory since the plaintiffs have not suffered an injury. In its Motion and Reply, Defendant boldly asserts that Plaintiff has not suffered any injury in this case. Describing Plaintiff's injuries as "purported", Defendant would have the Court overlook the undisputed fact that Plaintiff is a widow who has been denied benefits under the T-24 Policy, which her late husband intended to incorporate into his estate planning, based solely on Defendant's unilateral interpretation of its AD&D policies.

Defendant exclusively relies on *Erwin*, a case necessarily distinguishable from this case, to allege that it is a "fundamental tenet" of insurance law that the rights of third-party beneficiaries to sue are limited to breach of contract. *See* Defendant's Reply, p. 4. First, in her Response, Plaintiff has clearly described how *Erwin* does not stand for that overbroad proposition and is not even relevant to this case. *See* Plaintiff's Response, p. 5. In fact, *Erwin* distinguishes itself from this case since Defendant's misrepresentations occurred during the life

of the T-24 Policy. *See Erwin v. Texas Health Choice, L.C.*, 187 F.Supp.2d 661, 667-68 (N.D. Tex. 2002) ("Because third party beneficiary status is not conferred on an individual until the contract itself is formed, it would be illogical for a third party beneficiary to be able to sue in tort for actions committed by the promisor to the promisee *before* the contract was actually created.") (emphasis added). Further, Defendant fails to address the case law cited by Plaintiff which contradicts Defendant's interpretation of *Erwin*. *See* Plaintiff's Response, p. 5. If, as Defendant asserts, there exists such a "fundamental tenant" in insurance law, why has Defendant not cited a case from the Texas Supreme Court setting forth this tenet? Clearly, the reason for this is because such a principle does not exist. In fact, this very point was addressed in a case cited by Plaintiff which is completely ignored by Defendant. *See Webb v. Int'l Trucking Co.*, 909 S. W. 2d 220, 224 (Tex. App. – San Antonio 1995, no writ) ("The Supreme Court never says in [*Watson* and *Faircloth*], or any other opinion, that *all* statutory third-party actions are barred against insurance companies. If the Court had meant to say that it no doubt would have done so with a simple declarative sentence. It did not do so.").

Despite its reliance on inapplicable case law, Defendant goes on to argue that the T-24 Policy and the T-05 Policy are in no way related. Defendant would have the Court ignore the simple fact that the only reason Defendant refuses to provide Plaintiff her rightful benefits under the T-24 Policy, is because of Defendant's sale and maintenance of the T-05 Policy. Contrary to Defendant's Reply, Plaintiff's claims are not limited to Defendant's acts in the sale of the T-05 Policy, but also involve Defendant's tortuous conduct relating to the sale and maintenance of the T-24 Policy as well. *See* Complaint, pp. 1-22. As provided in the Complaint, Plaintiff expects to show that Defendant engages in a fraudulent scheme of selling insurance policies which contain the one policy only provision, and then market, solicit, and sell additional policies to its insureds,

and collect premiums on those policies, despite Defendants intent not to pay benefits on the same. *See* Complaint, pp. 1-22. In the Kocurek's case, Defendant collected proceeds on the T-24 Policy for about a year and a half despite not intending to pay benefits on that policy. This fact is not disputed by Defendant. Therefore, how can Defendant argue that Plaintiff has no cause of action based on Defendant's sale of the T-05 Policy to Mr. Kocurek, when Defendant is relying on the sale of the T-05 Policy to deny benefits to Ms. Kocurek under the T-24 Policy? Defendant's conduct in soliciting, selling, and collecting premiums on *both* policies are necessarily related. Plaintiff is confident that the Court, and eventually a jury, will reject Defendant's "King's X" argument that the Defendant's tortious conduct relating to the sale and maintenance of the T-05 Policy "ha[s] absolutely nothing to do with a claim for benefits under the Terms of the T-24 Policy..." since doing so would ignore Defendant's own reliance on the one policy only provision.

Defendant's disregard of the fact that Defendant itself required that Plaintiff execute the beneficiary form on T-24 Policy further evidences why Defendant's above argument lacks merit. Without providing any analysis, Defendant dismisses this important fact as irrelevant. *See* Defendant's Reply, p. 5. However, Defendant's requirement that Plaintiff sign the beneficiary form on the AD&D Policy evidences Defendant's acknowledgment that a spouse in a community property state such as Texas necessarily has an interest in the naming of beneficiaries under its AD&D policies. *See* Complaint, Ex. A. This completely contradicts Defendant's argument that Plaintiff has not suffered any injury because if Plaintiff did not have any interest in the AD&D policy benefits, why would Defendant require that she sign the insurance contract? Along those lines, this also raises a fact issue as to why Defendant did not require Plaintiff to sign the T-05 Policy as it did with the T-24 Policy. In reviewing the Reply, the Court can

identify all the factual assumptions Defendant makes and clearly see that Defendant's arguments unavoidably go into the merits of the case. Furthermore, Defendant raises this issue in a vacuum, only addressing Plaintiff's status as a named beneficiary under the policy, but completely ignores the fact that Plaintiff was Mr. Kocurek's wife, that the T-24 Policy was part of Mr. Kocurek's estate planning for Plaintiff, and that she is also an assignee of the Estate. Accordingly, Plaintiff has clearly suffered an injury which was caused by Defendant's conduct such that she has Article III standing.

### 2. Plaintiff is a Proper Representative of Mr. Kocurek's Estate

As provided above, Defendant seeks to separate Plaintiff's dual capacity in this case as a spousal beneficiary under Mr. Kocurek's AD&D policy and as the assignee of Mr. Kocurek's Estate. Unlike Defendant, Plaintiff would have the Court view Plaintiff's capacities in conjunction with another rather than independently. However, even if the Court were to separately analyze Mr. Kocurek's capacities, Plaintiff has properly pled under Rule 9(a) that Plaintiff is the assignee of the estate of Mr. Kocurek which invokes the Court's subject matter jurisdiction over the matter. As Defendant's Reply shows, Defendant clearly has notice that Broadway Bank is the executor of Mr. Kocurek's estate, and that Plaintiff has been assigned those claims. Taking Plaintiff's allegations as true, Plaintiff has clearly met the pleading requirements. Furthermore, the Court should note that Defendant does not cite to any case law which would support its assertion that dismissal is proper on this ground.

On the other hand, even if the Court were to adopt Defendant's argument, this is an issue that can be remedied by an amendment of the Complaint (as pled in the alternative by Plaintiff in her Response) which is even acknowledged by Defendant in its Reply. *See* Defendant's Reply, p.6, ¶2, ("*As alleged*, Plaintiff has not *adequately alleged* that she has standing to assert her

claims on behalf of the [*sic*] Mr. Kocurek.") (emphasis added). As a result, this is not proper grounds for dismissal.

### 3. Plaintiff has Standing to Assert Her Claims and on Behalf of Putative Classes

In its Reply, Defendant admits that its argument that Plaintiff does not have standing to sue on behalf of the putative classes is a reassertion of its unsubstantiated argument that Plaintiff lacks Article III standing. As established stated above and in the Response, Plaintiff has standing to sue as a spousal beneficiary of the AD&D policy and as an assignee of Mr. Kocurek's estate. Furthermore, the Court should note that Defendant does not contest that all the cases it cites in its Motion only relate to securities litigation. Additionally, Defendant does not challenge the case law cited by Plaintiff in her Response. Furthermore, Plaintiff has already filed a Motion for Class Certification addressing the issues raised by Defendant in its Motion which has been stayed by the Court pending a ruling on this Motion.

### C.     Plaintiff's DTPA Claims

#### 1. Plaintiff's DTPA Claims are Adequately Pled

Defendant itself acknowledges that this is not a proper ground for dismissal and instead an issue that can be addressed by an amended pleading. *See* Defendant's Reply, p.8 ("Plaintiff should now allege the bases for her claims and eliminate the future speculation on the part of CUNA Mutual and this Court"). Defendant's reliance on *Lopes v. State Farm Mutual Automobile Ins. Co.* is insupportable in this case since that case specifically involved a third-party claimant's claims under an automobile policy to which the claimant was not named as a beneficiary. The Court in *Lopes* refused the plaintiff's motion for leave because there were no facts which could conceivably support a finding that he was an intended third party beneficiary to the insurance contract or a consumer because the plaintiff was merely a third-party claimant

making a claim on an automobile insurance policy. This is simply not the case here since it is undisputed that Plaintiff is a named beneficiary in the T-24 Policy and that she executed the beneficiary form on that policy. Notwithstanding *Lopes*, Defendant fails to address the substantial federal case law cited by Plaintiff which provides that Plaintiff is not required to plead specific statutory provisions and that dismissal is not proper on those grounds. *See* Plaintiff's Response, p. 10. However, should the Court adopt Defendants' argument on this issue, Plaintiff should be allowed leave to amend its Complaint

## 2. Plaintiff's DTPA Claims and Insurance Code Claims Are Supportable

### a. Plaintiff's Status as a Consumer

As acknowledged in Defendant's Reply, a person need not be a consumer to invoke the protections of the DTPA and Texas Insurance Code. However, even if consumer status was required of Plaintiff, Plaintiff has cited case law holding that beneficiaries, fall under the DTPA's definition of "consumer", and thus may bring a claim under the DTPA and Insurance Code. *See* Plaintiff's Response, pp. 12-13. According to these cases, the question of whether a beneficiary is a consumer hinges on whether the plaintiff was an intended beneficiary to the policy. *Provident* (plaintiff was an intended beneficiary of the insurance policy purchased by her parents and the policy formed the basis of the complaint); *Kennedy v. Sale*, 689 S.W.2d 890, 892 (Tex. 1985) (even though employer, not plaintiff, purchased the insurance policy, plaintiff was a consumer under the DTPA because he was intended beneficiary of the policy). In this case, Defendant does not, and cannot, dispute that the T-24 Policy was for Ms. Kocurek's benefit. Accordingly, Ms. Kocurek, as an intended beneficiary of the policy, would fall under the purview of the DTPA and Texas Insurance Code. *See Kennedy, supra*. In further support of her consumer status under the DTPA and Texas Insurance Code, the insurance premiums on the T-

24 Policy and the T-05 Policy were paid with community funds for fourteen months until Mr. Kocurek's death. Moreover, it is undisputed that Plaintiff herself executed the beneficiary form which was part of the insurance contract. *See* Complaint, Ex. A.

The holding in *Metro. Life Ins. Co.* does not apply to this case because that case involved an interpleader action by the insurance company where the parties had already entered into a settlement agreement regarding the disbursement of the funds. Because the plaintiff-insurance company had already interpleaded the funds with the Court, the counter-plaintiff in that case was suing under Section 16 of Article 21.21 of Texas Insurance Code regarding the timing of the payments, rather than the benefits themselves. Specifically, the plaintiff alleged she was forced to pay unnecessary taxes because of the payment of the life insurance benefits. The court in *Barretto* did not fully address the relationship between the insured, the plaintiff, and insurance contract, however, the Court was clearly motivated by the fact that the insurance company was an innocent stakeholder in the matter. Furthermore, *Barretto* involved a summary judgment proceeding where the Court considered evidence presented by the parties, rather than a motion to dismiss where the standard is much more favorable to Plaintiff.

Accordingly, Plaintiff, as an intended beneficiary of the T-24 Policy, is a "consumer" for purposes of the DTPA and Texas Insurance Code.

### b.     Plaintiff's DTPA Claims Survive Mr. Kocurek's Death

Defendant simply ignores the significant case law cited by Plaintiff which holds that a DTPA claim survives the death of a consumer. *See* Plaintiff's Response, p. 12-13. However, even if the Court were to consider following *Launius*, that case involved a different set of facts than in this case which renders the *Launius* inappropriate. Important to note, *Launius* involved a lawsuit by the administrator of the estate of a homeowner who file suit against Allstate for claims

arising out of a homeowner's insurance policy. After debating the issue at length throughout the opinion, the Court chose to follow *Hackworth* and deny the administrator's claims under the DTPA and Texas Insurance Code. In the backdrop of that case, the Court also noted the fact issues that existed as to whether the homeowner-decedent had intentionally set fire to his home.

Unlike that case, which only involved real and personal property, the insurance policy in this case was an accidental death and dismemberment policy. Accordingly, the nature of the policy necessarily involves the death the insured. If, as in this case, the courts were to allow life insurance companies and accidental death and dismemberment companies to avoid liability under the Texas Insurance Code and DTPA, then there is no incentive for such insurance companies not to defraud their insureds since their insured's claims would die with them. Given the nature the insurance involved in this case, the court's reasoning in *Thomes* would be more applicable to the Court's analysis. Specifically, in holding that a cause of action under the DTPA should survive the death of the consumer, the Court in *Thomes* reasoned that "[t]o hold otherwise would be to ignore the intent of the legislature in enacting the DTPA and to allow violators to escape the intent just because their victims had the misfortune of dying before they were able to initiate suit... To bar the executrix of her estate, appellee, from pursuing a cause of action under the DTPA would serve to confound the purposes of the act which are to encourage litigants to prosecute private actions, to reduce the need for public enforcement, and to discourage false, misleading and deceptive trade practices." *See Thomes v. Porter*, 761 S.W.2d 592, 594 (Tex. App.—Fort Worth 1988, no writ). Defendant fails to address the Texas Supreme Court cases, including *PPG Industries*, which have cited *Thomes* regarding the survivability of claims and the DTPA's underlying purpose. *See Oppenheimer, Blend, Harrison & Tate*, 192 S.W.3d 780, 784 (Tex. 2006); *PPG Indus., Inc. v. JMB/Houston Ctr. Partners L.P.*, 146 S.W.3d 79, 85 (Tex.

2004). Moreover, unlike *Launius* where the decedent's claims were brought by the estate, in this case the Plaintiff is also Mr. Kocurek's wife, a beneficiary to the T-24 Policy (and thus a "consumer" under DTPA), *in addition* to being an assignee of the Estate.

**D. Plaintiff's Fraud Claims**

    **1. Plaintiff's Allegations of Misrepresentations**

Plaintiff would invite the Court to review the Complaint and the accompanying exhibits in their entirety. Under the "who, what, when, where, and how" standard set forth in *Williams*, the Complaint is sufficient to accomplish Rule 9(b)'s objective of providing notice to the Defendant of the claims made against it. In fact, Plaintiff goes so far as to attach the very documents which contain such misrepresentations. Evidencing Defendant's failure to fully review the Complaint, Defendant incorrect asserts to the Court that the word "unconscionable" only appears in one paragraph of the Complaint. *See* Defendant's Reply, p. 13. To the contrary, Plaintiff also asserts unsconscionability in Paragraphs 3 and 26 of the Complaint, which are incorporated into Fraud and Misrepresentations Claims. *See* Complaint, ¶¶ 3, 26, 34-41.

In reading its Reply, it is clear that Defendant seeks to pigeon-hole Plaintiff's fraud claim to only one of the many misrepresentations it has made to its insureds and their beneficiaries. Specifically, Defendant alleges that Plaintiff's fraud claim cannot be based on both the placement of the one policy only provision and the statements made in the promotional mailing. Certainly, this cannot be the objective of Rule 9(b). Defendant's own purported summary of the facts (albeit incorrect) supporting Plaintiff's fraud claim show that Defendant is fully apprised of the facts underlying Plaintiff's claims for fraud. Moreover, the factual information upon which Plaintiff's fraud claim is based is within Defendant's knowledge and control which relaxes Rule

9(b)'s pleading requirement. *See In re Burlington Coat Factor Sec. Litig.*, 114 F.3d 1410, 1418 (3d Cir. 1997); *Corley v. Rosewood Care Ctr., Inc.*, 142 F.3d 1041, 1051 (7th Cir. 1998).

However, since Defendant is only alleging that pleading requirements have not been met, should the Court adopt Defendants' argument on this issue, Plaintiff would seek leave to amend its Complaint prior to dismissal.

### 2. Reliance Based on Purported Duty to Read to the Policy

Defendant completely misrepresents to the Court that Plaintiff does not allege that the one policy only provision is ambiguous. *See* Defendant's Reply, p. 14, fn. 9. To the contrary, Plaintiff has alleged in the Complaint and her Response that the provision is ambiguous. *See* Complaint, pp. 6, 16-17; Defendant's Response, p. 16. Consistent with its Motion, Defendant continues to misconstrue Texas case law in its favor. Specifically, Defendant asserts a self-proclaimed principle that an insurance company can *never* be liable for fraud or misrepresentations because an insured has a duty to read his or her insurance policy. *See* Defendant's Reply, p. 13-14. The case law cited by Defendant simply does not create such an overbroad (and incorrect) tenet. If the Court were to adopt this principle, then the statutory provisions of the DTPA and Insurance Code relating to an insurance company's misrepresentations would be rendered useless.

All of the cases cited by Defendant involve the same set of facts: i.e. an insured alleges that an oral representation made by an insurance agent modified the insurance contract. For example, in *Hutton*, the Court held that an insurance agent's oral representations could not as a matter of law override the written contract terms where the agent lacked authority to make oral representations that altered the written terms of the Policy. Similarly, in *Shinder,* the Defendant failed to keep the policy enforced by failing to pay his premiums. In charging the plaintiff with

knowledge that the policies had terminated in May 1981 for non-payment of premiums, the Court in *Shindler* held "appellants may not assert a claim for misrepresentation based on conduct by appellees that occurred after the policies had terminated due to appellants' non-payment of premiums." Similarly, in *Brown & Brown of Texas, Inc.*, the plaintiff, who was not named as an insured or beneficiary on the property insurance policy, alleged misrepresentation based on oral representations made by the agent. The facts of those cases do not fit the facts in this case since Defendant's misrepresentations were made while the policies were enforced and Defendant consummated its misrepresentations by selling the additional policy to Mr. Kocurek and accepting premiums on both policies until the date of Mr. Kocurek's death. Furthermore, in all those cases, the court held, or the parties stipulated, that the insurance contract was not ambiguous. In contrast, in this case, Plaintiff has alleged that the insurance contract and the one policy only provision are ambiguous and unconscionable. Moreover, unlike Defendant's Motion to Dismiss, all the case law relied upon by involved summary judgment proceedings after discovery on the merits.

Defendant also mischaracterizes Plaintiff's unconscionability arguments. Plaintiff is well-aware of the elements of fraud and knows that unconscionability is not an element *per se* of this cause of action. Instead, in response to Defendant's self-proclaimed affirmative defense that there can never be a fraud claim against an insurance company because there is purported duty on an insured to read the policy, Plaintiff would show that even if such an affirmative defense existed, such duty would be vitiated by the ambiguity and unconscionability of the one policy only provision and the policy.

Finally, with respect to Plaintiff's analogy between the DTPA and Insurance, Defendant itself invites such a comparison in its Reply by raising the same argument on Plaintiff's DTPA

and Insurance claims as well as her fraud and misrepresentations claim. *See* Defendant's Reply, p. 10, fn. 5. Defendant, however, goes on to allege that neither the DTPA and Insurance Code statutory provisions are relevant to the [fraud] inquiry and should be entirely disregarded by the Court. *See* Defendant's Reply, p. 15. Defendant clearly contradicts itself.

### E. Plaintiff's Negligence Claim

Defendant's Reply plainly ignores the case law cited by Plaintiff which establishes the well settled principal that accompanying every contract is a common law duty to perform with care, skill, reasonable expedience, and faithfulness the thing agreed to be done and that a negligent failure to observe any of these conditions is a tort as well as a breach of contract. Instead, in an obvious attempt to muddy the waters, Defendant takes two contrasting positions in its Motion and in its Reply. Specifically, in its Motion to Dismiss Defendant argues that Defendant's liability, if any, simply does not arise independent of the insurance policy. However, when confronted with Plaintiff's case law, which establishes the legal duty. Defendant makes a complete turnaround and argues that its liability is limited to the contract. *See* Defendant's Motion, p. 18 and Defendant's Reply, pp. 2, 16. Essentially, Defendant argues in its Motion, that Plaintiff must show an independent duty outside of a contractual relationship. *See* Defendant's Motion, p. 18. In response, Plaintiff has done so by pointing out the case law which states that accompanying every contract is a common law duty to perform without negligence. *See* Plaintiff's Response, p. 18. Now, Defendant argues that its *only* duty exists under the contract. Accordingly, Defendant argues that it has not duty which precludes it from marketing, soliciting, and selling additional AD&D policies to its insureds, and collecting premiums on these policies, the whole time not intending to pay benefits on at least one of those policies. Furthermore, Defendant asserts that it has no duty to discover its duplications in

coverage neither under the contract nor outside of the contract despite the contractual language to the contrary. *See* Complaint, Ex. A. Clearly, Defendant's reasoning is flawed.

**F. Economic Loss Rule Does Not Apply**

Once again Defendant attempts to avoid liability by alleging that Policy T-05 and Policy T-24 are mutually exclusive of each other despite the undisputed fact that Defendant is withholding Plaintiff's rightful benefits under the T-24 policy based on Defendant's marketing and sale of the T-05 Policy to Mr. Kocurek. Defendant simply ignores the case law cited by Plaintiff in her Response which describes the Supreme Court's refusal to apply the economic loss rule to a defendant's fraudulent conduct and limit a defendant's liability to contractual proceeds. *See* Plaintiff's Response, pp. 20-21. Defendant does not raise any new substantive arguments in its Reply.

### III. CONCLUSION

Because Plaintiff's and all others similarly situated factual allegations support a claim upon which relief can be granted and because the Court has subject matter jurisdiction over this case, the Court should deny Defendant's Motion and retain the case on the Court's docket. In the alternative, if the Court determines Plaintiff has failed to state a claim, Plaintiff asks the Court to grant leave to amend the Complaint.

### PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff, individually and on behalf of all others similarly situated, respectfully requests this Court to enter an Order denying Cuna Mutual Insurance Society's Motion to Dismiss, and for such other relief as is just and equitable.

Respectfully submitted,

**MARTIN & DROUGHT, P.C.**
Bank of America Plaza, 25th Floor
300 Convent Street
San Antonio, TX 78205
Telephone: (210) 227-7591
Facsimile: (210) 227-7924

By: /s/ Benjamin R. Guerra
    GERALD T. DROUGHT
    State Bar No. 06134800
    BENJAMIN R. GUERRA
    State Bar No. 24055600

ATTORNEYS FOR PLAINTIFF

## CERTIFICATE OF SERVICE

I hereby certify that on the 21st day of November 2008, I electronically filed the foregoing document with the Clerk of the Court using the CM/ECF system which will send notification of such filing to the following:

Mr. Stephen L. Baskind
Kleiman Lawrence Baskind Fitzgerald LLP
8750 N. Central Expressway, Ste. 777
Dallas, TX 75231

Roland C. Goss
Robin Marie Sanders
Jorden Burt LLP
1025 Thomas Jefferson St., Ste. 400 East
Washington, DC 20007

        /s/ Benjamin R. Guerra
        BENJAMIN R. GUERRA

W:\LIT\GTD\KOCUREK\FEDERAL COURT\Sur-ReplytoCuna'sReply.doc