IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BARBARA KOCUREK, Individually and as | § | |
| Assignee of THE ESTATE OF | § | |
| LOUIS J. KOCUREK, and on Behalf of All | § | |
| Others Similarly Situated, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | CIVIL ACTION NO. SA-08-CA-581-FB |
| | § | |
| CUNA MUTUAL INSURANCE SOCIETY, | § | |
| | § | |
| Defendant. | § | |

## ORDER CONCERNING DEFENDANT CUNA MUTUAL INSURANCE SOCIETY'S MOTION TO DISMISS

Before the Court is an apparent case of technical legal first impression involving accidental death and dismemberment (AD&D) insurance contracts and the marketing thereof. Underlying and related to this matter is what appears to be a *Homo Sapien* tug of war between plaintiff and her adult stepchildren over who gets to spend the $150,000 their late husband and father was kind enough to provide for them.[1] Unfortunately, much of those funds will likely be dissipated by litigation costs if reasonable compromise fails.

While the Court finds defendant CUNA Mutual could and should be more transparent and less deceptive in its marketing and contractual dealings with its customers, the Court is bound by Texas legal precedent favoring insurance companies to grant CUNA Mutual's motion to dismiss.

Before the Court are Defendant CUNA Mutual Insurance Society's Motion to Dismiss (docket #6), Plaintiff's, Individually and on Behalf of all Others Similarly Situated, Response to CUNA Mutual Insurance Society's Motion to Dismiss and Alternatively, Motion for Leave to

---

[1] Interpleader petition styled CUNA Mutual Insurance Society v. Barbara Kocurek, Louis J. Kocurek, III, Alberto T. Kocurek, Kristopher M. Kocurek, John R. Kocurek, and Patricia A. Kocurek, Cause No. 2007-CI-11313 pending in the 45th Judicial District Court of Bexar County, Texas.

Amend Pleadings (docket #11), CUNA Mutual Insurance Society's Reply in Support of Its Motion to Dismiss (docket #17), Plaintiff's, Individually and on Behalf of all Others Similarly Situated, Sur-Reply in Support of Response to CUNA Mutual Insurance Society's Motion to Dismiss (docket #20), and CUNA Mutual Insurance Society's Response to Plaintiff's Sur-Reply in Support of her Response to Defendant's Motion to Dismiss (docket #21).  Pursuant to rules 12(b)(1) and 12(b0(6) of the Federal Rules of Civil Procedure, defendant CUNA asks that plaintiff's class action complaint and jury demand be dismissed because: (1) plaintiff lacks standing to bring this suit on her behalf, on behalf of the Estate, and on behalf of the putative subclasses; (2) count I of plaintiff's complaint fails as a matter of law because it is inadequately pleaded under rule 8(a) of the Federal Rules of Civil Procedure, plaintiff is not a "consumer" under the statute, and DTPA claims do not survive the death of the consumer, Mr. Kocurek; (3) count II of the complaint fails because the fraud claim is not pleaded with the requisite particularity as required by rule 9(b) of the Federal Rules of Civil Procedure nor did plaintiff or Mr. Kocurek reasonably rely on any alleged misrepresentation or nondisclosure; (4) count III of the complaint fails because plaintiff fails to allege a legal duty owed by CUNA, and (5) all of the claims should be dismissed as a matter of law because they are barred by the economic loss rule.  Plaintiff claims she has standing, her claims are adequately pleaded, and her claims are not barred by the economic loss rule.

## Background

According to plaintiff's Class Action Complaint, Louis J. Kocurek, Jr., as a member of Firstmark Credit Union, purchased an accidental death and dismemberment (AD&D) policy naming plaintiff as the primary beneficiary, Cuna Policy No. T5903024 (hereinafter the "T-24 policy").  The policy was issued on or about November 1, 2004, in the amount of $200,000.  The

contingent beneficiaries to this policy were Mr. Kocurek's children from a previous marriage: Louis J. Kocurek, III, Alberto T. Kocurek, Kristopher M. Kocurek, John R. Kocurek, and Patricia A. Kocurek.

After paying premiums on the T-24 policy for about four months, Mr. Kocurek received a promotional mailing from defendant offering him additional AD&D coverage. Mr. Kocurek purchased additional AD&D coverage by completing and returning the enrollment form included with the mailing. On or about April 1, 2005, a second AD&D policy, Policy No. T8314105 (hereinafter the "T-05 policy"), in the amount of $300,000 was issued by the defendant. Policy T-05 names Mr. Kocurek's children as the primary beneficiaries and the plaintiff as the contingent beneficiary. Mr. Kocurek paid premiums on both policies for over a year and a half until his accidental death on July 27, 2006.

Shortly after Mr. Kocurek's death, plaintiff attempted to collect benefits on Policy T-24, and the Kocurek children filed their claim under Policy T-05. Although there is no longer a dispute Mr. Kocurek's death was accidental,[2] defendant refuses to pay the benefits on the T-24 policy because of a one policy only provision which defendant contends voids the T-24 policy. Before paying any benefits or premiums on either policy, defendant filed an interpleader petition and request for declaratory judgment in state court naming the plaintiff and the Kocurek children as the defendants. Defendant claimed it was uncertain who the proper beneficiaries were because, according to its interpretation, it was no longer under an obligation to pay benefits on the T-24

---

[2]    See Exhibit B attached to Plaintiff's Complaint - letter to CUNA Mutual dated January 25, 2007, "I have attached a copy of your letter of October 13, 2006, in which you stated that Mr. Kocurek's death was not due to an accident. His death did in fact result from an infection he received from an injury he suffered on June 26, 2006"; Exhibit C attached to Plaintiff's Complaint - Letter dated April 17, 2007, to plaintiff's counsel, "As I understand Cuna Mutual Group's current position, it is no longer contesting whether the death in question was accidental."

policy based on the one policy only provision.  Defendant was dismissed without prejudice from the state action after it was allowed by the court to interplead the funds relating to Policy T-05. Defendant has not refunded the premiums paid under the  T-24 policy it now claims is void or interest on the premiums.[3]

Plaintiff contends the defendant intends to mislead its customers by placing the one policy only provision at the end of the policies under the heading "General Provisions," despite the availability of other more appropriate policy sections.  Defendant also solicits and continues to solicit its current customers with promotional mailings which "offer phantom additional coverage."  Plaintiff also complains the defendant fails to mention in its promotional mailings the one policy only provision nor is there any indication the defendant has or has ever had a competent system in place internally to discover or identify duplicate coverage.

Plaintiff alleges three causes of action on behalf of herself and six purported subclasses. Those causes of actions are for false, misleading or deceptive acts or practices, fraud/misrepresentation, and negligence/gross negligence.  In its motion to dismiss, defendant contends all of plaintiff's claims should be dismissed because: (1) plaintiff does not have standing to bring this suit as either the beneficiary or purported assignee of the Kocurek Estate; (2) to the

---

[3]       According to the Agreed Order on Interpleader signed by Judge Janet Littlejohn in the 45th Judicial District Court of Bexar County Texas on April 14, 2008, the court ordered CUNA Mutual to deposit the sum of $151,590 into the registry of the court.  These funds represented "the proceeds of Insurance Certificate T8314105 and a "return of premiums."  CUNA Mutual was also discharged from the interpleader action.  The order further provided the case would "continue on the merits between only Barbara Kocurek and Louis J. Kocurek, III, Alberto T. Kocurek, Kristopher M. Kocurek, John R. Kocurek, and Patricia A. Kocurek to determine their respective rights to the proceeds of Insurance Certificate T8314105 interpleaded into the Court."  The court concluded, "[n]othing herein affects the rights of these parties to make a claim for settlement to the interpleaded funds.  Likewise, nothing herein affects the right of Barbara Kocurek to make a claim against Cuna Mutual for entitlement to the proceeds of Insurance Certificate T5903024."  Exhibit A attached to Defendant CUNA Mutual Insurance Society's Motion to Dismiss, docket #6.  According to Defendant's Motion to Dismiss, docket #6 at page 4, footnote 1, "CUNA Mutual sought to refund the premium on Policy T-24 in the interpleader action, but the refund was refused."

extent a violation of the Texas Deceptive Trade Practices Acts (DTPA) is being alleged, plaintiff's claim as the beneficiary of the terminated policy fails as a matter of law because she is not a "consumer"; (3) any DTPA claim alleged by the plaintiff as the purported assignee of the Kocurek Estate also fails because DTPA claims do not survive the death of the "consumer"; (4) despite a failure by the plaintiff to identify any alleged misrepresentation(s) by the defendant, plaintiff's fraud claim fails because neither she nor Mr. Kocurek could have reasonably relied on any misrepresentation(s); (5) plaintiff's negligence claims fail because plaintiff has not alleged a legal duty owed to her by the defendant, and (6) the economic loss rule bars all of plaintiff's claims because the claims are contract-based claims seeking purely economic damages and are therefore governed by the express terms of the insurance policies at issue. Plaintiff disagrees.

## Standard of Review

The standard of review to be applied to motions to dismiss has been revisited by the Supreme Court. In Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007), the Court explained the standard as follows:

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligations to provide the "grounds" of his "entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).
>
> . . . . And of course, a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and "that recovery is very remote and unlikely."

(Citations omitted). The Court continued its explanation of this standard with reference to the often cited Conley v. Gibson opinion:

> Justice Black's opinion for the Court in Conley v. Gibson, spoke not only of the need for fair notice of the grounds for entitlement to relief but of "the accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond

doubt that the plaintiff can prove not set of facts in support of his claim which would entitle him to relief." This "no set of facts" language can be read in isolation as saying that any statement revealing the theory of the claim will suffice unless its factual impossibility may be shown from the face of the pleadings; and the Court of Appeals appears to have read <u>Conley</u> in some such way when formulating its understanding of the proper pleading standard.

On such a focused and literal reading of <u>Conley's</u> "no set of facts," a wholly conclusory statement of claim would survive a motion to dismiss whenever the pleadings left open the possibility that a plaintiff might later establish some "set of [undisclosed ] facts" to support recovery. So here, the Court of Appeals specifically found the prospect of unearthing direct evidence of conspiracy sufficient to preclude dismissal, even though the complaint does not set forth a single fact in a context that suggests an agreement. It seems fair to say that this approach of pleading would dispense with any showing of a "'reasonably founded hope'" that a plaintiff would be able to make a case. . . .

Seeing this, a good many judges and commentators have balked at taking the literal terms of the <u>Conley</u> passage as a pleading standard, and [i]n practice, a complaint . . . must contain either direct or inferential allegations respecting all the material elements necessary to sustain recovery under *some* viable legal theory. . . ."

We could go on, but there is no need to pile up further citations to show that <u>Conley's</u> "no set of facts" language has been questioned, criticized, and explained away long enough. To be fair to the <u>Conley</u> Court, the passage should be understood in light of the opinion's preceding summary of the complaint's concrete allegations, which the Court quite reasonably understood as amply stating a claim for relief. But the passage so often quoted fails to mention this understanding on the part of the Court, and after puzzling the profession for 50 years, this famous observation has earned its retirement. The phrase is best forgotten as an incomplete negative gloss on an accepted pleading standard: ***once a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the complaint.***

<u>Id.</u> at 1968-69 (citations omitted, italic emphasis in original; bold and italic emphasis added). In addition to this standard, this Court, generally, may not consider matters outside of the pleadings in deciding a motion to dismiss for failure to state a claim, and if those matters are considered, the motion should be treated as a motion for summary judgment. <u>In re Katrina Canal Breaches Litigation</u>, 495 F.3d 191, 205 (5th Cir. 2007). However, documents attached to the motion may be

considered if they are central to the claim and referred to in the complaint. Id. To withstand dismissal for lack of standing, plaintiffs have the burden to prove by a "preponderance of the evidence the existence of an actual controversy." Hosein v. Gonzales, 452 F.3d 401, 404 (5th Cir. 2006).

**Relevant Policy Provisions**

Both the T-24 and T-05 policies were issued on the same policy form and contain the same substantive terms. The only difference in the policies is the amount of coverage and the named beneficiaries. Both policies contain a 31-day free look provision as well as the one policy only provision. Those provisions provide as follows:

> **YOUR RIGHT TO EXAMINE THIS CERTIFICATE FOR 31 DAYS:** *You* may return this certificate to *us* for any reason and get a refund within 31 days of: (1) the date *you* received the certificate or, if later; (2) the effective date shown on *your* certificate schedule. *We* will refund any premiums paid. The certificate will be void from the start and will be treated as if it had not been issued.
>
> **PART II: GENERAL PROVISIONS**
> * * * * *
> **11.03 Other Insurance with *Us* And Duplicate Coverage:** *You* may not be the *insured* under more than one certificate per participating association. Upon discovery of a duplication, *we* will consider *you* to be covered under the certificate which provides the greatest amount of coverage, and will refund any duplicated premium payments which may have been made by or on your behalf. In addition, *we* reserve the right to limit the total *additional amount* for a *covered person* to the maximum allowable amount of coverage according to *our* underwriting rules then in effect. If the total amount of coverage exceeds this limit, it will be reduced to the maximum allowable amount, and *we* will refund the portion of premiums paid which are attributable to the amount of the reduction.

**(Emphasis and italics in original.)**

<u>**Does Plaintiff Lack Standing to Allege Claims on Her Behalf and a Putative Class?**</u>

Defendant alleges the plaintiff lacks Article III standing in this case because she cannot assert claims in her capacity as a beneficiary under the T-24 policy because she was not injured. A beneficiary to an insurance contract must rely on the contract made between the parties and the

right of recovery depends on the performance of the terms of the contract. Without an allegation that CUNA breached its contract with Mr. Kocurek, plaintiff's rights as a beneficiary are not impacted and she has not been injured by defendant's actions. Additionally, defendant argues the plaintiff lacks standing to bring her claims as a beneficiary under the T-24 policy because her claims are tort-based and cannot, therefore, be asserted by third-party beneficiaries. In support of this assertion, defendant relies on Erwin v. Texas Health Choice, L.C., 187 F. Supp. 2d 661 (N.D. Tex. 2002). In addition, defendant notes the plaintiff as the "self-proclaimed 'Assignee of the Estate of Louis J. Kocurek' lacks standing to allege claims on behalf of the Kocurek Estate, because there are no facts in the record showing that Plaintiff has been appointed 'assignee' by the independent executor of the Kocurek Estate." Defendant's Motion to Dismiss, docket #6 at page 9. Defendant states the documents attached to plaintiff's complaint "show that the independent executor of the Kocurek Estate is Broadway National Bank and there are no facts or allegations in the Complaint alleging that Broadway National Bank assigned Plaintiff the rights to act on behalf of the estate." Id.

In response, plaintiff argues she has been injured and clearly meets the requirement for Article III standing because:

> (1) she has suffered an injury and extreme hardship by not having access to the funds left to her by her late husband; (2) this injury was caused by Defendant's conduct occurring after Policy T-24 was issued and Plaintiff had signed the Beneficiary Form; and (3) if the Court were to grant a favorable decision to Plaintiff and the class by awarding of monetary damages it would redress the injury sustained by Plaintiff. Defendant would have the Court ignore the obvious injury that Plaintiff has suffered as a widow who has not received the funds that Mr. Kocurek believed he was leaving to her under Policy T-24.

Plaintiff's Response to CUNA Mutual Society's Motion to Dismiss, docket #11 at page 5.

Plaintiff maintains her injury is obvious because she has suffered as a widow who did not receive

the funds her late husband believed he was leaving to her.   Plaintiff contends the defendant's reliance on the decision in <u>Erwin</u> is oversimplified because the claims in that case were regulated by ERISA thus precluding state law claims, the fraudulent inducement and negligent misrepresentations occurred before the insurance contract was executed and the plaintiffs acquired third-party beneficiary status, and defendant's interpretation of third-party beneficiary law would prevent third-party beneficiaries from ever bringing a tort-claim against an insurer thus undermining the purposes of the Insurance Code, the DTPA, and other causes of actions devised to protect insured and beneficiaries from insurers.   Unlike the tortious conduct which occurred before the contract was signed in <u>Erwin</u>, CUNA's tortious conduct here occurred after plaintiff was named the beneficiary of Policy T-24.    Plaintiff reminds the Court she is also suing in the capacity as the representative of Mr. Kocurek's estate.   She states she has been properly appointed as an assignee of the Estate's claims, and prior to the filing of this case, plaintiff and Broadway Bank executed an Assignment of Claims Agreement.

In reply, defendant argues plaintiff's new alleged injury (suffered as a widow because she has not received the funds her husband believed he was leaving to her) fails to support standing in this case because this injury is not based on the terms of the T-24 policy, the only policy under which plaintiff was named the beneficiary.   Instead, plaintiff is trying to hold CUNA Mutual liable based on its purported conduct in selling the T-05 policy, a policy under which plaintiff has never been the beneficiary.   Plaintiff admits this in her Response to Defendant's Motion to Dismiss wherein she states, "[i]n this case, it was Defendant's negligent conduct outside of its performance under Policy T-24 which caused injury to Plaintiff and to the Class." <u>Docket #11</u> at page 19.   Defendant contends plaintiff's complaint and response "make it clear that [plaintiff]

is asserting claims based on common law and statutory tort-based claims, as a result of CUNA

Mutual's purportedly tortious conduct relating to the sale and maintenance of the T-05 Policy, not

the T-24-Policy."  CUNA Mutual's Reply, docket #17 at page 5.  Because plaintiff's claims have

"absolutely nothing" to do with her claim for benefits under the T-24 policy, defendant maintains

plaintiff has not suffered a cognizable injury and therefore lacks Article III standing.  Plaintiff's

attempt to distinguish the Erwin decision, according to the defendant, also fails because the crucial

part of the holding in Erwin is "[t]he rights of third-party beneficiaries to sue a party to the

[insurance] contract *extend only to a cause of action for breach of contract.*"  CUNA Mutual's

Reply, docket #17 at page 4 (emphasis in original).  [4]

---

[4]  In response to defendant's reply, plaintiff has filed an 18-page sur-reply chastising defendant for needing to file
a 17-page reply to her response in an "attempt to circumvent the meritorious arguments raised in Plaintiffs' Response."
CUNA Mutual has filed a response to plaintiff's sur-reply asking this Court to disregard plaintiff's filing because sur-replies
are appropriate only when new legal theories are raised by the movant or the movant presents new evidence in the reply,
and CUNA Mutual's reply did neither.

As set forth by the court in Murray v. TXU Corp., No. Civ. A. 303CV0888P, 2005 WL 1313412 at *4 (N.D.
Tex. May 27, 2005):

> The purpose for having a motion, response, and reply is to give the movant the final opportunity to be
> heard, and "to *rebut* the nonmovants' response, thereby persuading the court that the movant is entitled
> to the relief requested by the motion.  A sur-reply is appropriate by the non-movant only when the
> movant raises new legal theories or attempts to present new evidence at the reply stage.  In this case,
> Plaintiff is not challenging any newly-presented legal theories raised by Defendants in their Reply.
> Plaintiff simply wants an opportunity to continue the argument.  Nevertheless, the Court addresses each
> of Plaintiff's concerns.
>
> Plaintiff's first two concerns deal with purported new arguments raised by Defendants.  These
> contentions lack merit.  All of Defendants' arguments either rebut Plaintiff's Response, or bolster the
> arguments made in Defendants' initial Motion.  Yet, Plaintiff contends that "Defendants have misstated
> many of Plaintiff's arguments," and that this tactic would "trick" and "distract" the court.  Again, such
> contentions lack substance.  The Court is well aware that a party will buttress its own arguments while
> trying to undermine those from opposing parties.  Such tactics are neither novel, nor surprising.  Indeed
> they are expected to a certain extent.  In short, the Court need not be coddled in its reading of motions
> and briefs.

(Emphasis in original, case law and motion citations omitted); see Meecorp Capital Markets, LLC v. Tex-Wave Indus., LP,
No. C-06-148, 2006 WL 2883054 at *1 n.2 (S.D. Tex. Oct 5, 2006) ("'sur-reply is appropriate by the non-movant only
when the movant raises new legal theories or attempts to present new evidence at the reply stage'"); see also Springs Ins.,
Inc. V. American Motorists Ins. Co., 137 F.R.D. 238, 239 (N.D. Tex. 1991) ("there should be little doubt 'that the party
with the burden on a particular matter will normally be permitted to open and close the briefing.'  This principle is sound.
In our jurisprudence the party who must persuade the court of the merits of the relief it seeks is almost always given the
final word.").  Moreover, the Western District of Texas Local Rule CV-7(e) does not allow for further submissions beyond
a reply in support of a motion absent leave of court.  See Moore v. Ford Motor Co., No. 08-02092, 2008 WL 3981839 at

As set forth in her response, plaintiff states her "injury was caused by Defendant's conduct occurring after Policy T-24 was issued and Plaintiff had signed the Beneficiary Form." However, the plaintiff was not the third-party beneficiary of the contract which plaintiff contends resulted from defendant's false, misleading or deceptive acts or practices, defendant's fraud and misrepresentations, and defendant's negligence or gross negligence. Although the decision in Erwin focused on ERISA claims, the court also addressed plaintiff's alternative pleading of fraudulent inducement and negligent misrepresentation claims by explaining:

> that Plaintiff lacks standing to bring fraudulent inducement and negligent misrepresentations claims against Defendants as third-party beneficiaries of the contract that resulted from the alleged fraudulent inducement and negligent misrepresentations. The rights of third-party beneficiaries to sue a party to the contract extend only to a cause of action for breach of contract. Because third party beneficiary status is not conferred on an individual until the contract itself is formed, it would be illogical for a third party beneficiary to be able to sue in tort for actions committed by the promisor to the promisee before the contract was actually created. Only the promisee, U-Haul, would have standing to bring such claims, as it was the alleged victim of Defendants' tortious conduct. Thus the Court finds as a matter of law that Plaintiff does not have standing to bring her fraudulent inducement and negligent misrepresentation claims.

Erwin v. Texas Health Choice, L.C., 187 F. Supp. 2d 661, 667-68 (N.D. Tex. 2002) (citations omitted). In addition, as stated by the court in Palma v. Verex Assur., Inc., 79 F.3d 1453, 1459 (5th Cir. 1996), upon which plaintiff relies, in order for Ms. Kocurek to qualify as a third-party beneficiary under Texas law, she must "prove three things: (1) that she was not privy to the written agreements between [her husband] and [CUNA Mutual]; (2) that the contract was made

---

*1 n.3 (S.D. Tex. Aug. 22, 2008) ("no provision under the federal or local rules of civil procedure permitting the filing of a surreply without leave of Court"). Although this Court granted an unopposed motion to extend time to file a surreply, plaintiff never requested or obtained leave of court to file her surreply in the additional time extended to her. Therefore, because plaintiff acknowledges in her sur-reply that she "believes that her Response adequately addresses the many holes in Defendant's Motion . . . [but] Plaintiff files this sur-reply in order to address the many legal fallacies and factual inconsistencies raised in Defendant's Reply" it appears defendant did not raise new legal theories or present new evidence in its response necessitating or allowing a sur-reply. Accordingly, this Court will not consider the plaintiff's sur-reply or CUNA Mutual's response to plaintiff's sur-reply.

at least in part for her benefit; and (3) that the contracting parties intended for [Ms. Kocurek] to benefit by their written agreement."  Because plaintiff cannot qualify as a third-party beneficiary under the T-105 policy, the Court agrees she does not have standing to assert her alleged tort claims.  However, out of an abundance of caution, the Court will, in the alternative, consider whether defendant's motion to dismiss plaintiff's claims as a matter of law has merit even if the plaintiff is found to have standing.

Defendant also challenges plaintiff's standing as the assignee of the Estate of Louis J. Kocurek because the documents attached to the complaint show the independent executor of the estate is Broadway National Bank and plaintiff has not presented any facts or allegations in her complaint that Broadway National Bank assigned plaintiff the right to act on behalf of the estate. Relying on rule 17 of the Federal Rules of Civil Procedure, defendant contends an action is required to be prosecuted in the name of the real party in interest.  Without a proper assignment, the plaintiff has no power to act on behalf of the estate and is not a real party in interest in the action.

In response, plaintiff states that pursuant to rule 9(a)(1) of the Federal Rules of Civil Procedure, a party's capacity to sue or be sued or a party's authority to sue or be sued in a representative capacity need not be alleged in a pleading except when required to show the court has jurisdiction.  To raise this issue, a party must do so by a specific denial.  Plaintiff claims she has adequately pleaded her capacity to bring suit in this case under rule 9(a).   Plaintiff acknowledges that Broadway Bank is the executor of the her husband's estate but states that prior to filing this action she and Broadway Bank executed an assignment of claims agreement. Therefore, plaintiff is the proper representative of the estate and has standing to pursue claim on

behalf of her husband's estate.  In the alternative, plaintiff requests leave of court to amend her complaint.

In reply, defendant argues plaintiff ignores the opening paragraph of rule 9(a) which states "[e]xcept when required to show that the court has jurisdiction."  Because CUNA Mutual is challenging this Court's subject matter jurisdiction based on plaintiff's standing as the purported assignee of claims by the executor of the estate, Broadway Bank, this issue is proper for a rule 12(b)(1) motion and because plaintiff has not adequately alleged she has standing to pursue the claim on behalf of her husband's estate, these claims should be dismissed as well as a matter of law.

In her complaint, plaintiff states she also "brings this suit as the Assignee of the Estate of Louis J. Kocurek to collect the premiums that were never refunded, along with interest on the same."  Complaint at page 2.  Rule 9 of the Federal Rules of Civil Procedure provides in part:

> (1) *In General*, Except where required to show that the court has jurisdiction, a pleading need not allege:
>
> (A)    a party's capacity to sue or be sued;
> (B)    a party's authority to sue or be sued in a representative capacity; or
> (C)    the legal existence of an organized association of persons that is made a party.
>
> (2)    *Raising the Issues*.  To raise any of these issues, a party must do so by a specific denial which must state any supporting facts that are peculiarly with in the party's knowledge.

FED. R. CIV. P. 9(a)(1) & (2) (emphasis in original).  The only case authority on this issue this Court could find is a recent decision from the Northern District of Texas.  There the court denied both the defendant's motion for a more definite statement and motion to dismiss which claimed an inability to frame a responsive pleading concerning the plaintiff's status as an assignee. Lexington Ins. Co. v. Chubb & Son, Inc., No. 3:09-cv-00561-B, 2009 WL 1940485 at *2 (N.D.

Tex. July 6, 2009).  The court noted:

> the Federal Rules of Civil Procedure do not require Federal to "allege [its] capacity to" sue in the Original Petition.  Furthermore, if Federal wishes to obtain more information about the assignment between Lexington and Greenfield to assist it in determining Lexington's capacity to sue, Federal may obtain the information through discovery.  The Court will not allow Federal to use its motion as a substitute for discovery.

**Id.**  Although in this case the defendant has not alleged an inability to frame a responsive pleading concerning Ms. Kocurek's assignment, the reasoning is still instructive.  Given the standard to be applied by this Court in ruling on a motion to dismiss, all factual allegations in the complaint are to be taken as true.  As such, plaintiff's assertion that she and the executor of her husband's estate have executed an assignment of claims agreement allowing her to pursue her husband's claims in this case will be taken as true and lack of standing on this basis alone will not be granted.

However, if plaintiff's claims survive the remainder of defendant's motion to dismiss, the Court will allow the plaintiff leave to amend her complaint to provide proper evidence of the alleged assignment by the executor of her husband's estate, the Broadway Bank.

### Does Count 1 of Plaintiff's Complaint Fail as a Matter of Law?

Count 1 of the complaint is entitled "FALSE, MISLEADING, OR DECEPTIVE ACTS OR PRACTICES" wherein plaintiff incorporates her previous factual allegations and sets forth the following claims:

> Defendant has misrepresented and concealed from its insureds the fact that it does not intend to pay benefits on any additional policies it issues to its current insureds under the one policy only provision for the purpose and with the intent of inducing its customers to purchase additional AD&D coverage with Defendant. Furthermore, Defendant has solicted, and continues to solicit, its current customers with promotional mailings which offer additional coverage at little or no cost despite its intentions not to pay benefits on these additional policies.

> Defendant concealed these and other material facts from its insureds, Plaintiff and

the other putative Class Members, tricking them into purchasing additional AD&D policies issued by Defendant.  Defendant knew or should have known that its deceptive practices would likely thwart the estate planning of its insureds, as it did in the Kocurek case, by leaving potential beneficiaries without an inheritance.  This conduct is unconscionable and an intentional and reckless disregard of the rights of the insureds and their beneficiaries which entitles Plaintiff and the putative Class to exemplary damages.

<u>Complaint</u> at page 12.  Defendant contends this claim is inadequately pleaded under the notice pleading requirements of rule 8(a) of the Federal Rules of Civil Procedure because it does not give notice of the statutory or common law claim being asserted.  Although the heading indicates to the defendant a statutory form of complaint, no specific statutory violation has been alleged.

Insofar as plaintiff is alleging a cause of action under the Texas Deceptive Trade Practices Act (DTPA), defendant asserts that regardless of plaintiff's lack of standing, her claims under the DTPA would fail as a matter of law.  Because plaintiff's only relation to the policy is to seek the proceeds of the policy, plaintiff cannot assert a cause of action under the DTPA.  Likewise, as the purported representative of the estate, plaintiff's claims would also fail because Texas courts have recognized that DTPA claims terminate upon the death of the consumer.

In response, plaintiff claims the defendant's objection and argument as to count 1 is undermined because it correctly acknowledges that count 1 is brought under the DTPA.  Plaintiff also explains her claims are not brought solely under the DTPA but also under Chapter 541 of the Texas Insurance Code which prohibits deceptive acts or practices by insurers as well.  Should this Court find plaintiffs complaint insufficient to fulfill the notice requirement, plaintiff believes the Court should grant her leave to amend.

Plaintiff also asserts her claims under the DTPA and Insurance Code would not fail as a matter of law.  As the beneficiary, plaintiff claims she would have a claim under the Insurance Code relating to defendant's false, misleading and deceptive acts.  With respect to the survivability

of DTPA to her husband's estate, plaintiff points to the split of authority in Texas on this issue. Because of this dispute in Texas law, plaintiff asserts the "Federal Courts must interpret Texas law as would the Texas Supreme Court." Plaintiff's Response at page 14.

Defendant, in reply, takes issue with the fact plaintiff has failed to indicate which sections of Chapter 541 she relies upon to assert her claims. As a result, defendant has not been given adequate notice because some Chapter 541 claims require the plaintiff to be a consumer under the DTPA. However, notwithstanding this failure, defendant contends these claims still fail as a matter of law. Plaintiff's status as the beneficiary of the T-24 policy does not make her a consumer within the meaning of the DTPA. In addition, based on a decision by the Northern District of Texas in Launius v. Allstate Ins. Co., NO. 3:06CV-0579-B, 2007 WL 113547 (N.D. Tex. Apr. 17, 2007, the federal courts have made the Erie analysis plaintiff requested concerning the survivability of DTPA and Insurance Code claims brought pursuant to Chapter 541 and have decided neither survives the death of the policyholder.

As explained by the defendant, the Northern District of Texas has held both DTPA and Insurance Code claims, such as those brought in this case, do not survive the death of the policyholder. In reaching that conclusion the court explained:

> Allstate argues that Lanius lacks standing to bring claims under either § 17.46 of the DTPA or § 541.060 of the Insurance Code because any causes of action Glasgow may have had under those provisions were extinguished upon Glasgow's death. Neither the DTPA nor the Insurance Code made provision for the survivability of a decedent's cause of action. The Texas Supreme Court has avowedly sidestepped any discussion of the survivability of DTPA damages, and intermediate appellate courts in Texas are split on the issue.
>
> In 1992, the Fifth Circuit certified the question of the survivability of a DTPA cause of action to the Texas Supreme Court, yet the Texas Supreme Court has yet to put forward an answer. At least one federal court in this district has followed the decisions of the San Antonio Court of Appeals in finding that DTPA causes of action do not survive the death of the consumer.

Lacking any controlling authority from the Texas Supreme Court on the issue, or, for that matter, a consensus among the lower state courts, this Court must venture an <u>Erie</u> guess as to how the Texas Supreme Court would decide the question if presented with the same case.  The Court begins this analysis by examining how the lower Texas courts have approached the survivability question.  The <u>Thomes</u> and <u>Hackworth</u> opinions, though coming to different conclusions, offer the most thorough analysis and thus provide a useful starting point.    Both opinions recognized that the common law provides the applicable rule of decision where, as with the DTPA, a statute fails to specifically address the survivability of a cause of action.  Where the courts differ is in their application of the common law.

The <u>Thomes</u> Court focused on the nature of a DTPA cause of action.  The court noted that the DTPA is a creature of the Texas legislature and represents "an amalgam of common law fraud, contracts, and tort considerations."  The court then pointed out that under the common law, actions for breach of contract and for the wrongful acquisition of property by fraud or deceit survived the death of either party.  "Applying these common law rules and liberally construing the purposes of the DTPA", the court concluded that it was "obvious that a cause of action under the DTPA *should survive* the death of the consumer."  (emphasis in original).

The <u>Hackworth</u> Court, in contrast, focused on the nature of remedies afforded by the DTPA.  Its logic was straightforward.  First, it recognized the basic rule under the common law that actions primarily affecting property and property rights survived the death of the aggrieved party whereas actions asserting purely personal rights did not.  Second, it noted that the right to recover punitive damages is a purely personal right.  Third, it found that an award of treble damages and attorney's fees, available under the DTPA, is "clearly punitive in nature."  Based on these basic premises, the court concluded that an action under the DTPA involves personal rights that, under the common law rule, do not survive the death of the consumer.

The approach recently taken by the Texas Supreme Court with respect to the assignability of DTPA claims - an inquiry which the Supreme Court itself termed "related but sometimes distinct" to the survivability question - suggests that the Texas high court would follow the <u>Hackworth</u> tack.  The <u>PPG Industries</u> Court resolved a split in the Texas appellate courts over the assignability of DTPA claims, holding that they are not assignable.  The Court first reasoned that the DTPA's primary goal is to protect consumers by encouraging them to bring their own consumer complaints, an aim which would be defeated if DTPA claims could be assigned to others, in some cases to others who might not even qualify as "consumers" under the statute.

More pertinent to our present purposes, the Court also followed the same analytical

path taken by the courts in <u>Thomes</u> and <u>Hackworth</u>.  That is, recognizing that the DTPA is silent as to whether claims brought under that statute are assignable, the Court recurred to the basic common law principle holding that property-based and remedial claims are assignable while claims that are personal and punitive in nature are not.  Notably, the Court acknowledged, as did <u>Thomes</u>, that the DTPA embraces many common law causes of action, including breach of contract, fraud and misrepresentation.  Unlike <u>Thomes</u>, however, the <u>PPG Industries</u> Court did not predicate the assignability of DTPA claims on whether the common law causes of action with which the DTPA overlaps could themselves be assigned.  Instead, like <u>Hackworth</u>, the Supreme Court focused on the nature of the *remedies* available under the DTPA, which, if found, "generally are [] punitive rather than remedial.  The Court stated that:

> The most important role of the DTPA is the remedies it *adds*, not the ones it *duplicates*.  Economic damages and attorney's fees are certainly remedial, but they were recoverable in contract and warranty long before the DTPA was passed.  The DTPA adds mental anguish and punitive damages - damages that could hardly be more personal.

In the end the Court held that "the personal and punitive aspects of DTPA claims cannot be squared with a rule allowing them to be assigned as if they were mere property."  If DTPA claims cannot be assigned because of their personal and punitive attributes, then this Court fails to see how such claims can survive the death of a consumer given the common law rule holding that actions to vindicate personal rights terminate with the death of the aggrieved party.

It was worth noting that in making its decision the <u>PPG Industries</u> Court also looked to whether allowing the assignment of DTPA claims would increase or distort the litigation process, noting that in past cases the Supreme Court had prohibited assignments that would, among other things, skew the trial process or confuse or mislead the jury.  Given the availability of mental anguish and punitive damages in DTPA claims, the Court found that "[j]urors are bound to experience some confusion in assessing mental anguish of a consumer, or punitive damages based on "the situation and sensibilities of the parties," when the affected consumer is not a party."  These same concerns are present in survivor cases given the obvious reality that a decedent cannot testify as to mental anguish suffered or to his own peculiar situation and sensibilities.

Extending the holding of <u>PPG Industries</u> to the survivor context is warranted by Texas law.  Texas courts have explained that where a statute fails to specify whether claims are survivable, "the test most commonly used to determine survivability is whether or not the cause of action may be assigned."  Given <u>PPG Industries</u>'s holding that DTPA claims generally cannot be assigned, it necessarily follows under the foregoing test that DTPA claims are not survivable.  In short,

based on an extension of the Texas Supreme Court's reasoning in <u>PPG Industries</u>, and on the San Antonio Court of Appeal's decisions in <u>Hackworth</u>, <u>Mendoza</u>, and <u>Lukaski</u>, this Court believes that the Texas Supreme Court, if confronted the issues raised by this case, would find that a consumer's cause of action under the DTPA does not survive the death of the consumer and cannot be brought by a representative of the consumer's estate.

This leaves the question of whether the same holds true for a cause of action under the Texas Insurance Code. The only case the Court has been referred to (or has found) specifically addressing the issue is <u>Mendoza v. American National Insurance Co.</u>, 932 S.W.2d 605 (Tex. App.–San Antonio 1996, no writ), which concluded that claims under the Insurance Code do not survive and cannot be brought by a representative of the decedent's estate. In so holding, the <u>Mendoza</u> Court found that the reasoning of <u>Hackworth</u> also applied to Insurance Code claims because treble damages available under article 21.21 of the Insurance Code (currently codified at § 541.060) are, like DTPA remedies, punitive in nature. The Court also notes that a federal court in this district has extended the holding of <u>PPG Industries</u> to bar the assignment of claims under the Insurance Code because, as with the DTPA, "the Insurance Code remedies are personal and punitive in nature." Therefore, following the holding of <u>Mendoza</u> and extending the holding of <u>Great American Insurance</u>, this Court concludes that any cause of action that Glasgow may have had under the Texas Insurance Code did not survive him.

<u>Id.</u> at 3-6 (citations omitted, emphasis in original). Accordingly, the Court agrees with the defendant that plaintiff's claims in either capacity fail as a matter or law.

### Does Count 2 of Plaintiff's Complaint Fail as a Matter of Law?

Count 2 of the complaint in this case is captioned: "FRAUD/MISREPRESENTATION."

After incorporating all of the preceding facts as in Count 1, plaintiff's contentions are as follows:

Defendant has committed common law fraud, actual and constructive, having made material and false representations that are proximate causes of injury and damages to Plaintiff and the putative Classes. Specifically, the representations made by defendant in its promotional mailings regarding Defendant's additional AD&D coverage were false, or made recklessly without any knowledge of the truth, and as a positive assertion.

Defendant has acted with special knowledge in making the foregoing representations since it has exclusive access to information relating to coverage and benefits under the AD&D policies it issues to its insureds. Because Defendant is solely responsible for the underwriting of its policies and the maintenance of its insureds' records, Defendant's knowledge was and is superior to the knowledge of

the beneficiaries and insureds who purchased the additional policies.

Defendant made the foregoing false representations willfully and with malice with the intention that these representations should be acted upon by its insureds. The insured, Plaintiff, and the putative Classes relied upon Defendant's representations and have suffered damages as a proximate result.

Defendant's purpose in failing to notify its insureds of its intentions to deny coverage on the additional policies issue was to confuse its customers and encourage them to purchase additional policies with Defendant,. The facts concealed by Defendant about the one policy only provision were material in that a reasonable insured would have considered them important in deciding whether to purchase an additional policy from Defendant.

Plaintiff, the insureds, and the putative Class Members reasonably and justifiably relied on Defendant's materially false, incomplete, and misleading representations about AD&D coverage, and the one policy only provision and were thereby induced to purchase additional AD&D policies from Defendant to the detriment of Plaintiff and the other putative Class Members.

As a direct and proximate result of Defendant's fraudulent misrepresentations, non-disclosures and active concealment, Plaintiff and the putative Class Members have suffered and will continue to suffer substantial injuries and damages for which they are entitled to recovery.

Plaintiff and the putative Class further allege that Defendant's conduct was willful, wanton, and malicious and done with gross indifference to the right of Plaintiff and the putative Class for which they [sic] law allows the imposition of punitive damages to which Plaintiff and the putative Class are entitled.

<u>Complaint</u> at pages 12-14. Defendant again takes issues with the pleading as failing to meet the pleading requirements of rule 9(b) of the Federal Rules of Civil Procedure requiring fraud to be pleaded with particularity. This rule requires the plaintiff to "'specify the statements contended to be fraudulent, identify the speaker, state when and where the statements were made, and explain why the statements were fraudulent.'" <u>Defendant's Motion to Dismiss</u> at page 14. Although vague references were made to representations made in defendant's promotional mailings for additional AD&D coverage, there is no allegation as to how these mailing were fraudulent and why the plaintiff was misled. Plaintiff fails to allege her personal receipt of any

alleged misrepresentations.

Moreover, defendant contends that even if the fraud claims are adequately pleaded, there can be no reasonable reliance in this case. An insured, under Texas law, has a duty to read the insurance policy and is charged with knowledge of its contents. Both policies contained the one-policy-only provision which could not be more clear. In addition, any assertion the promotional mailings contained the false representations in support of her claim is negated by numerous cases which hold a plaintiff cannot reasonably rely on alleged misrepresentations made during the course of marketing an insurance policy where the misrepresentations are contradicted by the express terms of the policy and where the plaintiff, as did Mr. Kocurek here, had an opportunity to cancel the policy without penalty. Any claims by the plaintiff in her beneficiary status, according to the defendant, are foreclosed by the decision in <u>Brown & Brown of Texas v. Omni Metals, Inc.</u>, 2008 WL 746522 (Tex. App.–Houston [1st Dist.] 2008), which held that "because the existence of coverage is a question of law to be determined by interpreting the insurance policy itself, a person who is not a party to an insurance policy cannot recover from the insurance company or its agent based on information outside of the actual policy."

Plaintiff maintains her pleading sufficiently complies with the pleading requirements of rule 9. She asserts she described in detail defendant's fraudulent conduct and misrepresentations in detail in the following paragraphs:

16.   The one policy only provision relied upon by Defendant specifically provides as follows:

11.03 Other Insurance With Us and Duplicate Coverage:
You may not be the insured under more than one certificate per participating association. Upon discovery of a duplication, we will consider you to be covered under the certificate which provides the greatest amount of coverage, and will refund any duplicated premium payments which may have been made by or on your behalf.

*Exhibit "A", Policy T-24.*

17.     Defendant, with the intent of concealing its intentions to withhold benefits under the one policy only provision, includes this statement in the final paragraph of the final section of the final page of its policies.  This provision is purposefully laid out at the end of the policies with the intent of misleading its customers.  Furthermore, the one policy only provision is set forth in the final section of the policy entitled **"Part 11: GENERAL PROVISIONS,"** despite the availability of more appropriate sections in the policy where a reasonable insured might expect to find such a clause, including, **"Part 2: COVERAGE PROVIDED," "Part 3: BENEFIT PAYABLE FOR LOSS," "Part 6: EXCLUSIONS–WHAT IS NOT COVERED," "Part 7: COVERAGE START AND STOP DATES,"** and **"Part 10: WHO RECEIVES BENEFITS."**  Based on the manner in which AD&D policies are drafted by Defendant, it is apparent that Defendant's intentions are to confuse its insureds and trick them into purchasing additional AD&D policies despite its intention to not pay benefits on same.  As in the Kocurek's case, many of Defendant's insureds who are named under multiple AD&D policies are completely unaware of Defendant's plan to withhold benefits on the additional policies, which will only become evident after the insured has died and the time for estate planning has passed.

18.     In spite of Defendant's plan not to pay benefits on any additional policies under the one policy only provision, Defendant has solicited, and continues to solicit, its current customers with promotional mailings which offer phantom additional coverage.  These promotional mailings specifically include the following statements which are designed to mislead its insureds:

> "Plan records show that you do not have this < $3,000> accident coverage which you are automatically entitled to at <u>no cost</u>.  This coverage helps protect your family's financial security in the event of an accident."

> "An open enrollment period is underway through < Month 00, 0000> .  During this time, members of < XYZ Federal Credit Union> , age 18 and over, have the opportunity to take advantage of this no-cost member benefit.  <u>Premiums for this coverage will be completely paid for by the credit union</u>.  CUNA Mutual Insurance Society is also giving these same members a chance to add <u>up to $300,000</u> to this no-cost coverage."

> "To claim your < $3,000> no-cost coverage, complete the enrollment form on your statement.  If you want to get additional coverage, complete the same enrollment form.  Premiums for this added coverage will be automatically deducted from your account < every month> < every three months> .  It's that convenient!"

*See Exhibit "B", Promotional Mailing (emphasis in original).*[5]

19.     Nowhere in these promotional mailings does Defendant refer its customers to the one policy only provision in its policies. Completely unaware of Defendant's intent not to pay out on these additional policies pursuant to the only [sic] policy only provision, Mr. Kocurek, and other insureds, purchased, and continue to purchase, the additional AD&D coverage offered by Defendant believing that these benefits would be paid out at the time of their death. Violating the trust placed in it by its customers, Defendant instead denies coverages under the one policy only provision, thwarting the estate planning of its insureds.

20.     Furthermore, despite the purported value Defendant places on "discovering" duplicate coverage in its AD&D policies, there is no indication that Defendant has, or ever had, in place a competent system of identifying such duplications. Clearly, under Defendant's scheme, there is no incentive for Defendant to discover such duplications, since, according to Defendant's interpretation of its policies, it can continue to collect premiums from its insureds under both policies until it "discovers" the duplication without ever having to pay out on the additional policy or pay interest on the premiums it refunds. Under this practice, Defendant gets to utilize the unearned premiums on the additional policies without incurring any penalty for its own failure to discover such duplication in coverage. In fact, the only parties that suffer from Defendant's failure to discover such duplicate policies are the unsuspecting insureds and their beneficiaries.

21.     As an example, in the Kocurek's case, Mr. Kocurek paid premiums on both policies for eighteen months until his death in July 2006. Almost certainly, had Mr. Kocurek not passed away at that time, Defendant would have continued to collect unearned premiums on both policies and applied these premiums against other AD&D policies, with Defendant never intending to pay benefits on these policies or interest on the refunded premiums.

<u>Plaintiff's Complaint</u> at pages 5-7. Plaintiff contends the misrepresentations in defendant's

promotional mailings are exactly the kind of conduct which gives rise to claims under the DTPA

and Insurance Code. Additionally, plaintiff points to the Insurance Code which expressly

prohibits misrepresentations by insurers about the benefits or advantages of the policy and

---

[5]     The promotional mailing concluded with the following paragraph: "For more information regarding this Credit Union Member insurance protection, call 1-877-MEMBERS (1-877-636-2377). Also enclosed with the letter was a Statement of Benefits which included an enrollment form. At the bottom of this form the following language appears, "<The total amount of Accidental Death and Dismemberment additional coverage you may have with us is $300,000. Premiums will be deducted automatically from your account each quarter or billing notices will be sent directly to you semi-annually.>

prohibits making any statement with respect to the business of insurance that is untrue, deceptive, or misleading.  As for defendant's challenge that the plaintiff or Mr. Kocurek could not have reasonably relied on any purported misrepresentations or omissions in purchasing either policy is a fact issue to be resolved by a jury and plaintiff is not required to prove her claims until discovery has been conducted.  Moreover, it is not reasonable that Mr. Kocurek would have purposely purchased a second policy and paid premiums on both knowing full well no benefits were going to be paid on Policy T-24.

Despite the plaintiff's factual allegations, defendant reasserts its prior claim that "Texas law unequivocally provides that *as a matter of law* 'an insured has a duty to read [his or her] insurance policy and is charged with knowledge of its provisions.'  Hunton v. Guardian Life Ins. Co. Of Am., 243 F. Supp. 2d 686, 706 (S.D. Tex. 2002)."  Defendant's Reply, at page 13. With respect to plaintiff's own claims of fraud, defendant reminds the Court of the holding in Brown.  Because the one-policy-only provision is unambiguous, any alleged contradictory statements made in the promotional mailings are irrelevant and cannot form the basis of plaintiff's fraud claim.  See Shindler v. Mid-Continental Life Ins. Co., 768 S.W.2d 331, 334 (Tex. App.– Houston [14th Dist.] 1989, no writ) ("claim for misrepresentation can not stand when the party asserting the claim is legally charged with knowledge of the true facts").  Defendant further takes issue with plaintiff's attempt to cast her allegations of fraud under the DTPA and Insurance Code to avoid the dismissal of her common law fraud and misrepresentations claims.

In reviewing the plaintiff's claims and the unambiguous language of the one policy only provision, the Court agrees with the defendant that plaintiff's claim asserted in Count 2 also fails as a matter of law based in part on the recognized duty in Texas that *as a matter of law* "an

insured has a duty to read [his or her] insurance policy and is charged with knowledge of its provisions." Hunton v. Guardian Life Ins. Co., 243 F. Supp. 2d 686, 706 (S.D. Tex. 2002).

### Does Count 3 of Plaintiff's Complaint Fail as a Matter of Law?

With respect to the third count of plaintiff's complaint, labeled "NEGLIGENCE/GROSS NEGLIGENCE," the allegations are as follows:

> Defendant had a duty to exercise reasonable care in the marketing and soliciting of its AD&D policies to its customers and to timely discover any duplications in coverage. Defendant assumed this duty by the very language of the one policy only provision which places an affirmative duty on Defendant to discover such duplications. Defendant breached its duty in its failure to discover any duplications in coverage as stated above and was negligent in marketing additional AD&D coverage to its current insureds despite its intentions to deny benefits on the same.

> Defendant's negligence was a proximate cause of the injury and damages suffered by Plaintiff and the putative Class Members. As a foreseeable and proximate result of Defendant's breach of duty, its insureds estate planning was thwarted. At all pertinent times, it was foreseeable by Defendant, such that Defendant knew, or should have known, that its failure to discover duplicate policies upon which it intended to deny coverage would likely devastate the estate planning of its insureds, as it did in the Kocurek case, by leaving potential beneficiaries without an inheritance.

> In breaching its duty to its insureds, as described above, Defendant acted intentionally, recklessly, maliciously and wantonly in that Defendant knew or should have known, through information available exclusively to them, that their denial of coverage under the one policy only provision would result in the injuries complained of herein. As a result, Plaintiff and the putative Class members are entitled to punitive damages.

Complaint at pages 14-15. Defendant contends this claim fails as a matter of law because liability cannot be imposed if no legal duty exists, and Texas courts have not imposed a duty to explain policy terms to an insured when the terms are addressed in the policy. As previously set forth, Texas law imposes a duty on the insured to read the policy. Any liability on the part of the defendant would not arise independent of the insurance policy, and absent some legal duty owed by CUNA, plaintiff's negligence claims are subject to dismissal as a matter of law.

Plaintiff responds by asserting she is not claiming negligence on the part of CUNA in failing to explain the terms of the policy or failing to perform its obligations under the policy. Instead, plaintiff maintains her negligence claims center on defendant's failure to discover any duplications in coverage and in marketing additional AD&D coverage to current insureds despite defendant's intentions to deny benefits on same. Texas law recognizes a duty of reasonable care between an insurer and an insured. It is that degree of care and diligence that defendant failed to exercise in the management of its business. Defendant's negligent conduct in this case arises in its performance outside of its performance under the T-24 policy.

In reply, defendant notes plaintiff's response makes it clear she is premising her negligence claims on conduct outside of the performance of the T-24 policy. Defendant argues that under Texas law, claims for negligence alleged between contracting parties provides a legal duty of care only to the performance of the acts the parties agreed to perform. Because plaintiff has admitted her negligence claim is not based on the legal duty of care the defendant owed to plaintiff under the terms of the T-24 policy, her negligence claims asserted in Count 3 also fail as a matter of law. The Court agrees.

In order to state a claim for negligence, three elements are needed: "a duty, a breach of that duty and damages proximately caused by the breach." <u>Kroger Co. V. Elwood</u>, 197 S.W.3d, 793, 794 (Tex. 2006). "Whether a duty exists is a threshold inquiry and a question of law; liability cannot be imposed if no duty exists." <u>Id.</u> Here, plaintiff alleges the defendant was negligent in failing to discover duplicate coverage and in marketing additional AD&D coverage to its current insureds and defendant assumed this duty by the very language of the one policy only provision which places an affirmative duty on the defendant to discover such duplications. However, because plaintiff is claiming this conduct occurred "outside of [defendant's]

performance under Policy T-24," her claims fail as a matter of law. Jones v. Star Houston, Inc., 45 S.W.3d 350, 355 (Tex. App.–Houston [1ˢᵗ Dist.] 2001, no pet.) (finding "'a party to a contract to perform services generally owes a common law duty to perform with ordinary care and skill, and negligent omission or commission relating to the performance of the contract is a tort as well as a breach of contract"; but also finding "'a duty to perform with skill and care attaches *only* to the performance of the acts the parties agreed to perform") (emphasis in original).

## CONCLUSION

The case seems to be one of first impression and appears to be a classic case of bad facts making bad law. Although the Court is sympathetic to plaintiff's situation, the law does not support her asserted theories of recovery. Therefore, based on the arguments and authorities presented by the defendant in its motion and reply as well as the foregoing discussion, the Court finds that defendant's motion has merit and should be granted. Accordingly, IT IS HEREBY ORDERED that Defendant CUNA Mutual Insurance Society's Motion to Dismiss (Docket #6) is GRANTED and plaintiff's claims are DISMISSED. Motions pending, if any, are also DISMISSED.

It is so ORDERED.

SIGNED this 30th day of September, 2009.

FRED BIERY
UNITED STATES DISTRICT JUDGE